## LEGAL REPRESENTATIVES OF THOMAS, DECEASED, v. HOPPER, GARNISHEE, &c.

1. A garnishee who answers that he is indebted to the defendant in execution, cannot be discharged on the ground that he has a claim, as administrator of another person, for a larger amount. Such a claim is in the nature of a set-off, and, not being due in the same right, cannot be allowed as such.

2. A summons of garnishment is not in the nature of an equitable proceeding, but a *legal* remedy, and to be so treated.

ERROR to the County Court of Montgomery.

On the 1st of February, 1843, John D. F. Williams made oath before the clerk of the county court of Montgomery, that the legal representatives of William Thomas, deceased, had recovered a judgment in the Orphans court of said county, for the sum of eight hundred and seventy-one 60-100 dollars, besides costs, against one Anderson Thomas; that the defendant had no property, within the knowlege of affiant, in his possession; but that affiant believed that Joseph D. Hopper was indebted to said defendant, or had effects of defendant in his hands.

Upon that affidavit, a summons of garnishment issued against said Joseph D. Hopper in the usual form, requiring him to appear before the next county court of said county, and answer on oath, in what amount he was indebted to said defendant, and what effects of said defendant he had in his hands, &c.

Said summons was returned with acknowledgment of service

endorsed threon, and at the proper time, the garnishee appeared and answered that on the 1st of February, 1843, he had in his hands, as administrator of John Thomas, deceased, of whom Anderson Thomas, the defendant in the execution, was one of the heirs at law, about two thousand dollars; of this sum, by the order and decree of the Orphans' court the sum of five hundred and forty-nine 67-100 dollars, was ordered to be paid to the said Anderson Thomas; said garnishee further made oath, that previous to the service of said garnishment, the said garnishee, as administrator of Martha Thomas, deceased, held a judgment, or decree of the Orphans' court of said county, against said Anderson Thomas for about the sum of twenty-nine hundred dollars, and claimed to hold the amount due from him to said Anderson Thomas, to apply, *pro tanto*, to the payment of said judgment, held by him as administrator of said Martha Thomas against said Anderson Thomas: Whereupon the court adjudged, that the sum due from said garnishee, as aforesaid, was liable, and subject to the judgment debt held by him as administrator of said Martha Thomas, deceased, and not subject to said garnishment—and further ordered that said garnishee be discharged, go hence, and recover costs, &c.

To reverse this judgment, the plaintiffs prosecuted this writ of error, and now assign for error,

. 1. That from the return of the garnishee, judgment should have been rendered against him, for the amount admitted to have been in his hands.

WILLIAMS, for the plaintiff error.
ELMORE, *contra.*

CLAY, J.—The court cannot regard a summons of garnishment as an equitable proceeding, as insisted by the counsel for the defendant. The several acts which have been passed by our Legislature, authorising this process, in favor of plaintiffs who have obtained judgments, require the garnishee, when summoned, to be examined and proceeded against, "in the same manner as required by law against garnishees in original attachment." Then, the proceeding may be safely assimilated to that by attachment. Indeed, it may be regarded as a species of attachment; and treated as a branch of that remedy. Formerly, in this

state, and still in some, if not most of the other states, the attachment laws were construed with great strictness, as giving an extraordinary remedy, somewhat harsh, and the mere creature of statute. This strictness of construction went so far here, that proceedings in attachment were often quashed, or reversed, for defects of *form*, which were unimportant to the merits of the case. In consequence of the frequent instanstances in which the remedy was thus lost, and the substantial justice of the case defeated, the Legislature enacted that, "the attachment law of this State shall not be rigidly and strictly construed;" and, furthermore, authorised amendments of " any defects of *form* in the original papers, should the judge, or justice be satisfied, that such defects were not made for the purpose of defrauding the defendant in such suit." Still, this did not change the character of the proceeding, from a *legal* to an *equitable* one. It went far to place attachments on a footing with other proceedings in our courts of law, in which defects, or want of form, had long before been amendable; and the most that can be claimed under the act authorising such amendments of defects of form in attachments, or garnishments, would be to sustain them, as other suits at law, and determine the rights of the parties by the same legal principles, that would apply, if suit had been commenced by ordinary· process.

Assuming these views to be correct, how stands the case before us? The represntatives of William Thomas, deceased, have sued the garnishee as a debtor of Anderson Thomas, who has no property in possession. The garnishee acknowledges that he is indebted to him in a certain sum, which he holds in his hands as administrator of John Thomas, deceased, and which has been adjudged against him by the Orphans' court, in favor of said Anderson Thomas. Here, then, is a debt, for a specific sum, due from the garnishee to Anderson Thomas, for which he may sue, or have execution. How does the garnishee seek to avoid the recovery? By alleging that, as administrator of Martha Thomas, deceased, not in his individual right, nor as administrator of John Thomas,—he has a judgment, or decree against said Anderson Thomas, for a larger sum. Then, his defence is in the nature of a set-off; and the question arises, whether it is such an one, as the law will allow? To test this question, it is only necessary to enquire, whether the garnishee holds his claim against

Anderson Thomas in the same right, in which he is called upon to answer. Could he institute an action individually, or as administrator of John Thomas, and recover of Anderson Thomas the claim he sets up? We think not; for he says his claim is held in the right of being administrator of Martha Thomas, deceased. This has been laid down by this court, as the decisive test of the admissibility of a set-off. In the case of Pierce & Baldwin v. Hickenburg, [2 Porter, 196,] the plaintiffs had brought an action of assumpsit against the defendant in the circuit court of Tuscaloosa county. They declared for goods sold by the firm, to the defendant, and he relied on the pleas of *non assumpsit,* payment, and set-off in short. On the trial, the defendant offered as a set-off, a judgment obtained by him against Pierce, one of the partners, which was objected to, but admitted by the court, and the question turned entirely on the correctness of the opinion of the court, admitting the judgment as a set-off. This court held it to be " clearly inadmissible," and put the question—"could the defendant, by adopting a separate action, *for which the set-off is only a statutory substitute,* recover from the plaintiff, the amount of this judgment? Certainly he could not.

The case of Rapier, administrator of Mays, against Holland and Bruce, [Minor's Rep. 176,] shews how far this court has gone in sustaining the principle, that the debt, to be allowed as a set-off, must be due *in the same right* as that sued on. In the case cited, Rapier sued the defendants on a bill single given to him, as administrator. The defendants pleaded that Mays, at the time of his death, was indebted to Holland in a larger amount than the sum claimed in the declaration—replication, that at the time suit was commenced, the estate of Mays had been declared insolvent &c. special demurrer to this replication and joinder, and the circuit court sustained the demurrer, from which judgment Rapier prosecuted the writ of error—and this court held: " If we were to admit that the special replication of the plaintiff was bad, we should be bound to look back to the first error of the party de murring; there can be no doubt, but that the defendant's plea of set-off was bad, and would have been so held on general demurrer. In an action on a promise made to an administrator, a debt due from his intestate cannot be set-off; the demands are due in different rights, &c."

These decisions seem to settle the question: the claim proposed

to be set-off by the garnishee, in the case at bar, is not due to him in the same right, as that for which he is sued, or garnisheed; nor could he maintain an action in the character, in which he is garnisheed, for the claim he would set-off. Consequently, the court below erred in giving judgment for the garnishee, and the judgment must be reversed, and the cause remanded.